UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
EDDIE DEL VALLE,                        :
                    Plaintiff,          :
                                        :        11 Civ. 8148 (DLC)
        -v-                             :
                                        :        OPINION AND ORDER
THE CITY OF NEW YORK, NEW YORK CITY     :
DEPARTMENT OF EDUCATION, TANYUA         :
TREZEVANTTE, individually and in her    :
official capacity,                      :
                    Defendants.         :
                                        :
----------------------------------------X

For the Plaintiff:

James D. Moran
Law Office of James D. Moran PC
125 Roanoke Avenue
Riverhead, NY 11901

For the Defendants:

Eric Eichenholtz
Adam E. Collyer
New York City Law Department
Office of Corporation Counsel
100 Church Street, Room 2-144
New York, NY 10007

DENISE COTE, District Judge:

On October 7, 2011, the plaintiff Eddie Del Valle ("Del

Valle") commenced this action in the Supreme Court of the State

of New York, Bronx County against defendants the City of New

York ("the City"), New York City Department of Education

("DOE"), Tanyau Trezevantte ("Trezevantte"), and Amelia Olivera

("Olivera").  Del Valle's original complaint alleged violations

of his substantive due process rights under the Fifth and Fourteenth Amendments; race discrimination and retaliation in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. § 296 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.; and disability discrimination and retaliation in violation of the Americans with Disabilities Act, 29 U.S.C. § 12112 et seq. ("ADA").  The case was removed to this Court on November 10, 2011 and three of the defendants filed a motion to dismiss on December 15.  At a conference held on March 23, 2012, the Court granted the motion to dismiss as to all defendants,[1] but permitted the plaintiff to file an amended complaint asserting claims of age discrimination under the Age Discrimination in Employment Act ("ADEA").  Del Valle filed an amended complaint on April 27, asserting a claim of discrimination under the ADEA, 28 U.S.C. § 621 et seq. against the City, DOE, and Trezevantte.  The defendants moved for summary judgment on October 22.  This motion was fully submitted on November 30.  For the following reasons, the defendants' motion for summary judgment is granted.

---

[1] The Court sua sponte dismissed the claims against defendant Olivera, who had not yet been served at the time of the conference.

BACKGROUND

The following facts are undisputed or as shown by the plaintiff, unless otherwise provided.  Del Valle was hired by DOE on April 22, 1991 as a teacher at Public School 102 ("PS 102").  During his career as a teacher at PS 102, he has taught classes in second, third, fourth, fifth and sixth grade.  Del Valle is, and at the time of the events at issue was, over 40 years old.  At all relevant times, Trezevantte, who is around 60 years old, was the principal of PS 102.

From 2006 through 2008, Del Valle heard Trezevantte make a number of age-related comments.  Specifically, he recalls Trezevantte saying that "younger teachers work harder and move faster than older teachers," that "younger teachers are more energetic," and that she could not "understand why a teacher would want to be in a classroom all his life."[2]

During the 2006-2007 and 2007-2008 school years, Del Valle submitted notes from his personal physician to the DOE in explanation of seven absences.  An investigation was initiated when assistant principal Sheryl Kerewski noticed that two of the notes had inconsistent signatures and a word was misspelled on one of the notes.  The Special Commissioner of Investigation for

---

[2] The plaintiff's opposition brief also claims that Trezevantte said that "older teachers take too many days off."  There is no support for this statement in the record provided to the Court.

the New York City School District ("SCI") investigated the
matter and charged the plaintiff with submitting inaccurate,
false or misleading doctor's notes on seven occasions.  In
September 2008, as a result of the disciplinary charges, the
plaintiff was placed in a reassignment center or "rubber room"
while he awaited his disciplinary hearing.  On September 8, just
before the plaintiff was transferred to the reassignment center,
he observed an unidentified female teacher ("Jane Doe"), who
appeared to him to be "in her 20s," teaching in his classroom.
The plaintiff remained in the reassignment center through June
2010 and continued to receive his full salary.  Del Valle's
hearing was held over the course of four dates between December
2009 and March 2010.

On April 6, 2010, the hearing officer dismissed the charges
against Del Valle, concluding that there was insufficient
evidence to find Del Valle responsible for anything that was
inaccurate, false or misleading about the doctor's notes.
Although this decision was rendered on April 6, the plaintiff
was not permitted to return to PS 102 until September, the
beginning of the 2010-2011 school year.  The plaintiff does not
know the reason for the delay and the defendants have offered no
explanation.  The plaintiff claims that the fact that he was not
promptly returned to PS 102, prevented him from being able to

4

apply to teach Summer School or Saturday Academy and therefore prevented him from receiving the accompanying "per-session monies."

When Del Valle returned to PS 102 in September, he was assigned to teach second grade.  Del Valle noticed that Principal Trezevantte greeted him with what he describes as "cold stares and silence."  During his deposition the plaintiff was asked "Can you describe what you mean by this [sic] cold stares and silence?"  The plaintiff responded:

> Oh, okay, yeah, like when I would walk into -- one day I walked into the office.  This was after I got back from the rubber room.  I walked into the office and I forgot my ATS (attendance sheet). . . . [W]hen I walked down to the main office she [Trezevantte] looked at me, she said, "What are you doing here, Mr. Del Valle?"  I said, "I'm picking up my ATS."  She said, "Who's watching your class?"  I said, Ms. Orecchoio (phonetic), Ms. Orecchcio's watching my class.

Shortly after Del Valle's return in September of 2010, Olivera became an assistant principal and Del Valle's immediate supervisor.  On October 22, Olivera observed a lesson taught by Del Valle and wrote up a Formal Observation Report ("Observation Report") which was given to Del Valle on November 5.  The Observation Report describes the aim and objectives of the lesson, as well as the standards and materials used.  It also includes a lengthier section chronologically summarizing the lesson.  The Observation Report then describes the commendable

features of the lesson, which include Del Valle's planning and preparation, classroom management, and rapport with students. The Observation Report also offers recommendations for improvement.  Specifically, the Observation Report encouraged Del Valle to establish an environment which promotes student talk, to change the types of questions asked of students in order to reflect higher order questions thereby causing students to expand their thinking, to refrain from "code switching" when teaching students in their native language, to create charts that would be more accessible to the students, and to use the same graphic organizer during small group/guided reading time as the one modeled during the mini-lesson.  Finally, the Observation Report concludes with a rating of the lesson. Olivera rated Del Valle's October 22 lesson as unsatisfactory. In the conclusion section, Olivera states that she will have a conversation with both Mrs. Penta ("Penta"), a teaching coach, and Ms. Morales ("Morales"), a bilingual coordinator, and ask them to provide assistance to the plaintiff.  Penta is a woman "in her 20s" and Morales's age is unspecified, but she is identified as a "seasoned teacher."

On April 18, 2011, Del Valle filed a charge of discrimination with the United States Equal Employment Opportunity Commission, alleging discrimination on the basis of

6

his race, age, sex and disability.  Since that date, Del Valle
has continued to teach at PS 102.  He is currently assigned to
teach a bilingual fifth grade class.  Although Trezevantte has
not made any age-related comments to the plaintiff since 2008,
the plaintiff believes that Trezevantte holds ageist views.  In
April 2012, Del Valle overheard an exchange between Trezevantte
and a twenty-eight year old para-professional named "Rio" in the
hallway.  Trezevantte asked Rio to help her move a box.  When
Rio agreed to help move the box, Trezevantte said "Oh, 'cause
young people have so much strength, they're always on target."

DISCUSSION

      Summary judgment may not be granted unless the submissions
of the parties taken together "show that there is no genuine
issue as to any material fact and that the moving party is
entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).
The moving party bears the burden of demonstrating the absence
of a material fact question, and in making this determination
the court must view all facts in the light most favorable to the
non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986).  When the moving party has asserted facts showing that
the non-movant's claims cannot be sustained, the opposing party
must "set forth specific facts showing that there is a genuine

issue for trial," and cannot rest on mere "allegations or denial" of the movant's pleadings.  Fed.R.Civ.P. 56(e); <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010).  Nor can a non-movant "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  <u>Id.</u>

Under the ADEA it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  ADEA's protection against discrimination extends to those individuals who are at least 40 years old.  <u>D'Cunha v. Genovese/Eckerd Corp.</u>, 479 F.3d 193, 194 (2d Cir. 2007).  Claims of disparate treatment brought under the ADEA are analyzed under the three-step burden-shifting framework described in <u>McDonnell Douglas Corp v. Green</u>, 411 U.S. 792 (1973).  <u>D'Cunha</u>, 479 F.3d at 194-95.

First, the plaintiff must establish a <u>prima</u> <u>facie</u> case of age discrimination.  An employee satisfies the requirements of a <u>prima</u> <u>facie</u> case by showing 1) that he is a member of the protected age group, 2) that he was qualified for the position, 3) that he suffered an adverse employment action, and 4) that the adverse employment action took place under circumstances

giving rise to an inference of discrimination. Id. at 195. If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for the employment action. Bucalo v. Shelter Island Union Free School Dist., 691 F.3d 119, 128 (2d Cir. 2012). If the defendant satisfies this burden of production, the burden once again shifts to the plaintiff "to demonstrate that the proffered reason was not the true reason for the employment decision -- a burden that merges with the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination." Id. at 129 (citation omitted).

An age-discrimination plaintiff "sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 238 (2d Cir. 2007). Under the ADEA, a number of actions can constitute adverse employment actions, including "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Leibowitz v. Cornell Univ., 584 F.3d 487, 499 (2d Cir. 2009) (citation omitted). The

action, however, must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Id.

There are a variety of ways in which a plaintiff can demonstrate that the adverse employment action took place under circumstances giving rise to an inference of age discrimination. See e.g., Leibowitz, 584 F.3d at 502-03.  For instance, where the plaintiff challenges his removal from his position, the fact that he is replaced by someone who is significantly younger may raise an inference of age discrimination.  Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000).  An age discrimination plaintiff may also seek to rely on, among other things, comments or remarks evidencing ageist views, see Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 115 (2d Cir. 2007), evidence that similarly situated younger employees are treated more favorably than older ones, see Burger v. New York Institute of Tech., 94 F.3d 830, 833-34 (2d Cir. 1996), or statistical evidence demonstrating a pattern of adverse employment actions taken against older employees.  See Stanojev v. Ebasco Servs., Inc., 643 F.2d 914, 921 (2d Cir. 1981).  A jury cannot, however, "infer discrimination from thin air."  Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir. 1998).  Thus, if the plaintiff has failed to submit evidence from which a reasonable jury could find that the adverse employment action took place under circumstances

giving rise to an inference of age discrimination, summary judgment for the defendant is proper.  Cf. <u>Gallo v. Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1223-24 (2d Cir. 1994).

The parties do not dispute that Del Valle is a member of a protected class under the ADEA or that he is qualified for the position of school teacher at PS 102.  The parties do dispute, however, whether Del Valle has experienced a materially adverse employment action and, if so, whether the action took place under circumstances giving rise to an inference of discrimination.

For the reasons described below, the defendants have shown that they are entitled to summary judgment.  In brief, two of the alleged incidents of discrimination -- the initiation of the disciplinary proceedings and the plaintiff's transfer to the reassignment center -- are time barred.  Principal Trezevantte's cold treatment of the plaintiff, and an alleged scheduling mishap that may have occurred in September of 2010, are not material adverse employment actions as a matter of law. Assuming <u>arguendo</u> that the remaining incidents constitute adverse employment actions, the plaintiff has not shown that these actions took place under circumstances giving rise to an inference of discrimination.  Furthermore, with respect to the

unsatisfactory rating in the Observation Report, the defendants' have offered nondiscriminatory reasons for the unsatisfactory rating the plaintiff received, and the plaintiff has failed to raise a genuine issue of material fact concerning whether the true reason for the rating was more likely than not discrimination.

1. Disciplinary Investigation and Transfer to Reassignment Center

The plaintiff's amended complaint alleges that the decision to investigate his doctor's notes and his removal from the classroom and placement in the reassignment center in late 2008 were discriminatory.  The parties now agree, however, that plaintiff's complaint of age discrimination with respect to these incidents is time barred because the plaintiff did not file a charge with the EEOC until April of 2011.  29 U.S.C. § 626(d)(2)(complainant must file charge of discrimination with EEOC within 300 days of the alleged discriminatory incident); see also Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997).[3]

---

[3] The plaintiff states that this Court already decided at the March 23 Conference that these claims were time barred.  This is not precisely correct.  At the March 23 Conference, this Court decided that "to the extent plaintiff relies on the events that occurred in 2009 to establish discrete violations of either New York State or New York City Human Rights Law[s], those claims are barred by the statute of limitations."  See Amorosi v. South

2. Remaining Incidents

In opposing this motion, the plaintiff has identified five other incidents that he contends constituted adverse employment actions motivated by age discrimination.  First, the plaintiff claims that he was entitled to return to his position at PS 102 immediately after the disciplinary charges against him were dismissed on April 6, 2010.[4]  The plaintiff instead remained at the reassignment room through roughly June 26, 2010 -- the end of the 2009-2010 school year.  The plaintiff was permitted to return to PS 102 in September, the beginning of the 2010-2011 school year.  Second, he contends that he was not given a scheduled class as soon as he returned to school in September, although he began teaching second grade shortly thereafter. Third, following his return, Del Valle was treated in a cold manner by Principal Trezevantte.  Fourth, in November, Assistant Principal Olivera wrote an Observation Report and rated the lesson she had observed the plaintiff giving in October as

---

Colonie Independent Central School Dist., 9 N.Y.3d 367, 373 (2007).  It is nonetheless correct that, to the extent the plaintiff's ADEA claim relies on the 2008 disciplinary investigation and his placement in the reassignment center, it is time-barred.

[4] The defendants do not argue that Del Valle was not entitled to return immediately to PS 102.  The defendants have also offered no explanation for any delay in allowing Del Valle to return to PS 102.

unsatisfactory.  Fifth, Del Valle asserts that the
administration improperly delayed in giving him a twenty-year
longevity raise.

The plaintiff has presented no evidence to establish that
there was any delay in assigning him to a class in September
2010 or in giving him a longevity raise.  The plaintiff's
opposition brief states that "[u]pon his return to PS 102 he was
informed that he had no scheduled class and that a younger
teacher had been given his class.  She was still teaching upon
his return to the school.  The plaintiff observed her to be in
her 20s."  The plaintiff cites his deposition testimony for this
proposition.  These statements inaccurately describe the
plaintiff's deposition testimony.  In his deposition, the
plaintiff explains that on September 8, 2008 -- the last day
before he was sent to the rubber room -- he observed an
unidentified female teacher "in her 20s" -- Jane Doe -- teaching
his class.  The plaintiff was then asked about his return to PS
102 in September of 2010 and was asked about what happened to
Jane Doe.  The plaintiff responded: "She left.  She was not
there."  Thus, at least from plaintiff's deposition testimony,
it appears that Jane Doe was no longer working at PS 102 when he
returned to the school in September 2010.  Furthermore, although
the plaintiff's opposition papers state that when he returned to

14

PS 102 he was told that he had no scheduled class, there is no support for this statement in the excerpts of the plaintiff's deposition testimony or in any other evidence submitted to the Court.  Moreover, even if the plaintiff was initially informed in September of 2010 that he had no scheduled class, he admits that he was restored to his second grade class, and nothing in the record suggests that the scheduling mishap was "more disruptive than a mere inconvenience."  Leibowitz, 584 F.3d at 499 (citation omitted); see also Galabya v. New York City Bd. Of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (administrative miscues including delay in reassignment and mis-assignment were not adverse employment actions).  Under these circumstances, the minor inconvenience the plaintiff might have suffered by not having a specifically scheduled class immediately available to him when he returned in September of 2010 does not constitute a materially adverse employment action.

     With respect to Trezevantte's cold manner, nothing in the record suggests that Trezevantte's cold manner caused a materially adverse change in the terms and conditions of the plaintiff's employment.  The only incident that Del Valle described in his deposition was a simple inquiry by Trezevantte to ensure that Del Valle had not left his students without appropriate supervision.  In any event, it is well established

that such petty slights are not materially adverse employment
actions.  Cf. Tepperwien v. Entergy Nuclear Operations, Inc.,
663 F.3d 556, 571 (2d Cir. 2011) (superintendent's stare not
materially adverse employment action under more generous
standard for retaliation action); see also Wanamaker v. Columbia
Rope Co., 108 F.3d 462, 466 (2d Cir. 1997).

     The remaining two incidents that the plaintiff points to as
discriminatory are the approximately two-month delay in
reinstating the plaintiff to an active position following the
dismissal of disciplinary charges against him in April of 2010
and the unsatisfactory rating he received in the Observation
Report in November of 2010.  Assuming arguendo that the delay in
returning the plaintiff to PS 102 in April of 2010 and the
unsatisfactory rating can constitute materially adverse
employment actions, the plaintiff has failed to show that a
reasonable person could find that these actions took place under
circumstances giving rise to an inference of discrimination.[5]
But see Joseph v. Leavitt, 465 F.3d 87, 91-92 (2d Cir. 2006)
(continuation of administrative leave with full pay for
approximately five months after employer's disciplinary

---

[5] The parties do not address whether the failure to return the
plaintiff to PS 102 as of April 6, 2010 is itself time-barred.
Arguably, the failure to return the plaintiff immediately to PS
102 was a discrete act, and a claim with respect to that
discrete act accrued on April 6, 2010, or shortly thereafter.

investigation was suspended and after criminal charges against plaintiff were dropped did not constitute adverse employment action).

The plaintiff points to a number of circumstances in support of his claim that these actions occurred under circumstances giving rise to an inference of age discrimination. In particular the plaintiff relies on Principal Trezevantte's age-related comments, the fact that when he was transferred to the reassignment center in 2008 he was "replaced" by a younger teacher, a general atmosphere at PS 102 in which only teachers under 40 were hired and only teachers over 40 were removed for disciplinary reasons, and the fact that, after he received an unsatisfactory rating in the Observation Report, he was given the assistance of a "teaching coach" who was younger than him.

The plaintiff has failed to demonstrate that a reasonable jury could conclude that the defendants' actions took place under circumstances giving rise to an inference of age discrimination.  First, the plaintiff's allegation that only teachers under 40 were hired and only teachers over 40 were removed for disciplinary reasons is not supported by the record.[6]

---

[6] The plaintiff cites Principal Trezevantte's deposition testimony and his own for this proposition.  During her deposition, Trezevantte recalls that a substitute teacher over the age of 40 was subject to a disciplinary action.  During the plaintiff's deposition, the plaintiff recalls that he and two

The plaintiff may not rely on speculation or conclusory allegations to oppose a motion for summary judgment.  <u>Fabrikant v. French</u>, 691 F.3d 193, 205 (2d Cir. 2012).

Trezevantte's age-related comments are also weak evidence of age discrimination.  The Second Circuit has explained that when an employee points to discriminatory remarks as proof of discrimination

> the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination. . . . [and] remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark.

<u>Tomassi</u>, 478 F.3d at 115.  These considerations highlight the weak probative value of Trezevantte's comments.  There is no evidence in the record that Trezevantte was the individual responsible for the decision to delay Del Valle's return to PS 102 from April until September of 2010.  There is also no evidence that Trezevantte played any role in the unsatisfactory rating given by Assistant Principal Olivera in the Observation

---

other older teachers were removed to the "rubber room."  There is no evidence in the record as to the actual age of these two other teachers.  None of the deposition excerpts provided to the Court state that only teachers under 40 were hired or that only teachers over 40 were removed for disciplinary reasons.

Report in November of 2010.[7]  Additionally, most of the remarks made by Trezevantte occurred between 2006 and 2008.  The most recent comment made by Trezevantte in April 2012, to the effect that young people are physically strong and are always on target, does not have a strong tendency to show that the actions taken against Del Valle in 2010 were motivated by assumptions or attitudes relating to persons aged 40 or older.

The plaintiff also claims that when he was transferred to the reassignment center in September 2008, he was replaced by Jane Doe, a female teacher that he observed to be "in her 20s." There are several reasons why this is not reliable evidence of discriminatory intent.  First, it is too remote in time to either of the two adverse actions to be probative of the intent behind those actions.  Second, the plaintiff has offered no evidence to suggest that the person who chose his replacement was also involved in either adverse action.  Third, the plaintiff has not shown that he was actually replaced by a younger person.  The only admissible evidence on this issue is the plaintiff's testimony that on September 8, 2008, he saw Jane Doe teaching in his classroom and she appeared to him to be "in her 20s." The plaintiff infers that the woman he saw on

---

[7] There is also no evidence that Olivera herself made age-related comments or held ageist views.

September 8 was his replacement because when he returned to his classroom in September 2010 he found a small purse and other belongings of the former teacher.[8]   This circumstantial evidence hardly demonstrates that the plaintiff was replaced for two years by a substantially younger teacher.   Finally, although an age-discrimination plaintiff's replacement by a substantially younger plaintiff ordinarily gives rise to an inference of discrimination, it is not clear that this circumstance logically gives rise to the same inference when the adverse employment action being challenged is not the plaintiff's removal from a position but instead a delay in his reinstatement.

Finally, the mere fact that Penta -- the teaching coach who was assigned to assist the plaintiff following his receipt of an unsatisfactory rating -- was younger than the plaintiff does not give rise to an inference of age discrimination.   The plaintiff has drawn no connection between the employment of Penta and the alleged adverse employment actions at issue, namely the delay in

---

[8] There is no other evidence about the identity of Jane Doe or the specifics of her employment.   For instance, the record does not indicate Jane Doe's exact age, when Jane Doe was hired, whether she worked at PS 102 before the plaintiff was sent to the reassignment center in September of 2008, whether she continued to teach the plaintiff's second grade class during his absence, or when precisely she left PS 102.   The plaintiff offers only inadmissible hearsay evidence that his co-workers told him that Jane Doe continued teaching at PS 102 for the two school years that the plaintiff was in the reassignment center.

returning the plaintiff to PS 102 and the unsatisfactory rating in the Observation Report.  The mere fact that a younger person is also employed in the same workforce does not give rise to an inference of age discrimination.  The plaintiff has not alleged that Penta received this position over older more qualified applicants.  In sum, the plaintiff has not raised a question of material fact with respect to whether the delay in his reinstatement to PS 102 and the unsatisfactory rating he received in his Observation Report occurred under circumstances giving rise to an inference of discrimination.

The plaintiff has failed to establish a <u>prima</u> <u>facie</u> case of age discrimination, but even if he had, the defendant has offered a nondiscriminatory reason for one of the two surviving adverse employment actions.[9]  Specifically, the defendant argues that the Observation Report in which Olivera rated the plaintiff's October 22, 2010 lesson unsatisfactory itself offers legitimate nondiscriminatory reasons for the unsatisfactory rating.[10]  As described above, the Observation Report lists a

---

[9] As noted above, the defendant has offered no explanation for the delay in reinstating the plaintiff to PS 102.  The failure to provide a non-discriminatory reason is not determinative because the plaintiff has failed to establish a <u>prima</u> <u>facie</u> case of age discrimination.

[10] The plaintiff argues that the Observation Report, and thus the defendant's legitimate non-discriminatory reasons, is not

number of ways in which the plaintiff's teaching style and

lessons could be improved.  These perceived deficiencies in the

plaintiff's lesson constitute legitimate nondiscriminatory

reasons for the unsatisfactory rating.  The defendant's

articulation of a nondiscriminatory reason for the

unsatisfactory rating shifts the burden back to the plaintiff to

demonstrate that the true reason for the action was age

discrimination.  The plaintiff has failed to meet this burden.

The plaintiff's evidence of ageist bias has already been

discussed; this slight evidence does not raise a question of

---

admissible evidence because it is not authenticated.  Under
Federal Rule of Evidence 901, the requirement that evidence be
authenticated can be satisfied by "[t]he appearance, contents,
substance, internal patterns, or other distinctive
characteristics of the item, taken together with all the
circumstances."  Fed.R.Evid. 901.  In this case, internal
characteristics of the Observation Report, in conjunction with
the plaintiff's own deposition testimony, serve to authenticate
the Observation Report.  During his deposition, the plaintiff
described the Observation Report in detail.  For instance, the
plaintiff explains that the Observation Report includes his file
number which starts with the numbers "676," he states that the
Report lists his status as "tenured," he points out the section
of the Report in which Olivera wrote that she would have a
conversation with Mrs. Penta and Ms. Morales and that the two
women would provide the plaintiff with assistance, and he states
that he received an unsatisfactory rating.  Each of these
details is entirely consistent with the exhibit that was
provided to the Court.  Furthermore, the Report is signed by
both Olivera and the plaintiff.  The plaintiff does not claim
that either of these signatures is forged.

material fact with respect to whether the true reason for the unsatisfactory rating was age discrimination.

The plaintiff has offered only one other contention that relates to the truthfulness of the defendants' articulated nondiscriminatory reasons for the unsatisfactory rating. Specifically, the plaintiff contends that, before November of 2010, he had never received an unsatisfactory rating in an Observation Report.  Once again, this contention is found in the plaintiff's memorandum of law in opposition to the motion for summary judgment and not in the evidentiary record.  The closest statement the Court has found in the record comes from the following exchange that occurred during the plaintiff's deposition:

> Q:  Okay.  Other than that negative performance rating, have you ever received any other negative, and just to be clear, when I say that negative performance rating, I'm talking about the October 22, 2010 U rating.  Other than that rating, have you received any other negative performance ratings <u>at the hands of assistant principals</u>?
>
> A:  No.

(Emphasis supplied.)  Not only does this exchange fail to unequivocally demonstrate that the plaintiff has never before received an unsatisfactory rating, but it also does not address any of the specific deficiencies in the plaintiff's October 22 lesson that were identified in the Observation Report.  Thus,

the plaintiff has failed to offer evidence from which a
reasonable jury could find that the defendants'
nondiscriminatory reasons were pretextual or that the true
reason for the unsatisfactory rating was age discrimination.

CONCLUSION

The defendants' October 22 motion for summary judgment is
granted.  The Clerk of Court shall close the case.

SO ORDERED:

Dated:    New York, New York
          February 6, 2013


                              _____
                                       DENISE COTE
                              United States District Judge